994 F.2d 1197
 37 ERC 1049, 23 Envtl. L. Rep. 21,003
 STATE OF MICHIGAN, Michigan Department of Public Health,
Michigan Low Level Radioactive Waste Authority, Michigan
Department of Management and Budget, Michigan Natural
Resources Commission, Robert A. Bowman, Plaintiffs-Appellants,
v.
UNITED STATES of America, James D. Watkins, Kenneth M. Carr,
United States Nuclear Regulatory Commission,
Samuel Skinner, Richard Thornburgh,
Defendants-Appellees.
 No. 91-2281.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 19, 1993.
Decided June 2, 1993.
 
 John C. Scherbarth, Asst. Atty. Gen., Environmental Protection Div., (argued and briefed), Charles C. Schettler, Jr., Office of the Atty. Gen., Tort Defense Div., Lansing, MI, for plaintiffs-appellants.
 Louise F. Milkman, J. Carol Williams, Jeffrey P. Kehne (argued and briefed), Kenton W. Fulton, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, DC, Janice Kittel Mann, Thomas J. Gezon, Asst. U.S. Attys., Grand Rapids, MI, Anthony P. Hoang, Environmental & Natural Resources Div., Dept. of Justice, Washington, DC, for defendants-appellees.
 Before: MILBURN and RYAN, Circuit Judges; and COFFIN,* Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The State of Michigan appeals the portion of the district court's order dismissing two causes of action allegedly arising under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. Michigan had sought a writ of mandamus from the district court compelling the Nuclear Regulatory Commission and the Department of Energy to prepare two supplemental Environmental Impact Statements that would consider recent federal enactments requiring states to arrange for the disposal of their own low-level radioactive waste (LLRW). The district court dismissed Michigan's NEPA claims for lack of subject matter jurisdiction and lack of Article III standing. The issues before us are: 1) whether Michigan has standing under NEPA to seek a writ of mandamus compelling the United States to prepare environmental impact statements; and, if so, 2) whether the district court has jurisdiction over Michigan's mandamus action.
 
 
 2
 Because we conclude that Michigan does not have standing in this suit, we shall affirm the district court's dismissal order.
 
 I.
 A.
 
 3
 This case involves three congressional acts: The Atomic Energy Act of 1954, 42 U.S.C. §§ 2011 et seq.; the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq.; and the 1980 LLRW Policy Act and its 1985 amendments, 42 U.S.C. §§ 2021b et seq. A brief description of each act is necessary for an understanding of this dispute.
 
 
 4
 1. The Atomic Energy Act and "Part 61" Regulations
 
 
 5
 The purpose of the Atomic Energy Act, 42 U.S.C. §§ 2011 et seq., is to promote the use and development of atomic energy. This Act provides the basic authority for federal regulation and licensing of nuclear energy and nuclear materials. In December 1982, under the rule-making authority of the Atomic Energy Act, the Nuclear Regulatory Commission promulgated regulations for radioactive waste disposal. 10 C.F.R. Pt. 61. These "Part 61" regulations set forth "the procedures, criteria, and terms and conditions upon which the Commission issues licenses for the disposal of radioactive wastes." Id. The Part 61 regulations resulted from rule-making proceedings, which included the Nuclear Regulatory Commission's preparation of a 1982 Environmental Impact Statement (EIS). This 1982 EIS provided a general evaluation of the environmental effects of the Part 61 regulations.
 
 
 6
 2. The National Environmental Policy Act and "Part 51" Regulations
 
 
 7
 NEPA, 42 U.S.C. §§ 4321 et seq., provides for a national policy that encourages "productive and enjoyable harmony between man and his environment." See Pacific Legal Found. v. Andrus, 657 F.2d 829, 837 (6th Cir.1981). NEPA provides that when a federal agency undertakes "major federal action[ ] significantly affecting the quality of the human environment," it must prepare an EIS concerning that action. 42 U.S.C. § 4332(2)(C). Thus, NEPA is a procedural statute that is designed to ensure that federal agencies consider the environmental impact of their actions. The impact statement is evidence that the agency considered environmental concerns.
 
 
 8
 The Council on Environmental Quality promulgated regulations to establish a framework for federal agency compliance with NEPA. 40 C.F.R. Pt. 1500. These regulations provide that an agency has a mandatory duty to prepare or supplement an EIS when "significant new circumstances" arise that bear on environmental concerns. 40 C.F.R. § 1502.9(c)(1)(ii). The Nuclear Regulatory Commission also established its own regulations, "Part 51" regulations, to ensure self-compliance with NEPA requirements. See 10 C.F.R. Pt. 51. For example, Part 51 regulations require the Nuclear Regulatory Commission to augment its 1982 EIS whenever it issues or renews a Part 61 license to a disposal facility. See 10 C.F.R. §§ 51.20(b)(11), 51.80(a).
 
 3. The 1980 and 1985 LLRW Policy Acts
 
 9
 While the Atomic Energy Act establishes the authority for federal regulation and licensing of nuclear materials and waste, the Policy Acts of 1980 and 1985 create incentives for states to provide for the disposal of LLRW. LLRW is a hazardous by-product of atomic energy research and development. Much of the LLRW generated in Michigan is generated at nuclear power plants licensed and regulated by the Commission.
 
 
 10
 As of 1991, there were three sites in the United States for the disposal of LLRW--South Carolina, Washington, and Nevada. Because the nation needed additional disposal facilities, Congress enacted the LLRW Policy Act of 1980 to give states direct responsibility for disposing of the LLRW generated within each state. The 1980 Policy Act makes each state responsible for providing for LLRW disposal, either within or outside the state's borders. 42 U.S.C. § 2021d. It also allows states to enter into interstate regional compacts to provide for regional disposal facilities. 42 U.S.C. § 2021d(a)(2). The 1980 Policy Act relied on state cooperation for its implementation; however, the Act's incentives proved inadequate to ensure state compliance. In response, Congress enacted the 1985 LLRW Act. In the 1985 Act, Congress included milestones, incentives, and penalties to ensure that each state complied with the Policy Act's requirements by 1996. For example, the 1985 Policy Act provides that, if a state fails to provide for the disposal of all LLRW generated within its borders by a specific date, it will be required to take title to the LLRW it generates. 42 U.S.C. § 2021e(d)(2)(C).[1] Or, the 1985 Act provides that the three states who presently have disposal sites--South Carolina, Washington, and Nevada--can charge states who fail to comply with the statutory deadlines multiple surcharges for use of the disposal facilities and eventually deny noncomplying states access to the facilities. 42 U.S.C. § 2021e(e)(2).
 
 B. Michigan's Lawsuit
 
 11
 In 1982, in an effort to comply with the 1980 Policy Act, Michigan entered into a Midwest Compact with Iowa, Minnesota, Ohio, Indiana, Missouri, and Wisconsin. In 1987, the compact selected Michigan as the region's disposal facility site. Michigan began to take measures so that it could meet its obligations under the compact. Although the compact met two "milestones" required under the 1985 Policy Act, the compact did not meet the third milestone, which required the compact to submit, by a certain date, a completed application for a Part 61 disposal facility license. Because Michigan was not prepared to submit a license application to the Nuclear Regulatory Commission, each compact member had to certify that it was capable of providing for disposal of the LLRW generated within its borders by 1993. The Department of Energy accepted these certifications.
 
 
 12
 As compact negotiations continued, Michigan rejected three proposed sites for a disposal facility and continually failed to advance the siting process. Finding that Michigan failed to meet its responsibilities as the designated host state, the other members of the compact voted in April 1991 to revoke Michigan's membership.
 
 
 13
 By this time, Michigan had filed suit[2] against the United States (the Nuclear Regulatory Commission and the Department of Energy) in the Western District of Michigan. Counts I through V sought declarations that the 1985 Policy Act amendments violated constitutional principles of federalism by imposing impermissible responsibilities on the States. Counts VI and VII set forth Michigan's claims under NEPA, which requires that a federal agency prepare an EIS whenever that agency contemplates taking "major" federal action which may significantly affect the quality of the human environment. See 42 U.S.C. § 4332. Michigan sought mandamus relief to compel the Nuclear Regulatory Commission and the Department of Energy to prepare two separate EISes before January 1, 1992--
 
 
 14
 1) a supplement to the Nuclear Regulatory Commission's 1982 EIS reevaluating the environmental effects of the Part 61 licensing regulations in light of declining LLRW volumes and in light of the projected increase in disposal facilities resulting from the Policy Act's requirements; and
 
 
 15
 2) a programmatic EIS considering the potential impact of all proposed LLRW disposal facilities on the disposal of LLRW in light of the declining LLRW volumes.
 
 
 16
 Michigan claimed that it should be "relieved from its obligations under the 1985 Act pending the outcome of the obligations of the [Commission] to prepare" the EISes. The United States moved to dismiss the NEPA claims for lack of subject matter jurisdiction and failure to state a claim. The district court granted the motion to dismiss, finding that Michigan's constitutional challenges to the Policy Act, Counts I through V, were without merit. Michigan v. United States, 773 F.Supp. 997 (W.D.Mich.1991). With regard to Counts VI and VII, the district court concluded that Michigan had standing to assert its NEPA claims only if the claims were interpreted as part of an effort to force revisions to the Part 61 regulations. Because the relevant jurisdictional statutes require that requests for revisions to the regulations be raised first before the Nuclear Regulatory Commission in administrative proceedings, with direct judicial review in a court of appeals, the district court found that it lacked subject matter jurisdiction over Michigan's NEPA claims. Id. at 1004. The court concluded that if, as Michigan claimed, Michigan's NEPA claims were not a challenge to the regulations, Michigan lacked Article III standing, and the court had no power to decide the case. Id.
 
 
 17
 Michigan appeals the portion of the order disposing of its NEPA claims.[3]
 
 II.
 A.
 
 18
 Michigan argues that the district court erred when it dismissed Count VI, which sought a writ of mandamus compelling the Nuclear Regulatory Commission to supplement the 1982 EIS. Michigan also argues that the district court should not have dismissed Count VII, which sought an order directing the Commission, with the assistance of the Department of Energy, to prepare a "programmatic" EIS that considers the impact of all potential LLRW facilities that are to be developed as a result of the 1985 Policy Act.
 
 
 19
 Michigan argues that it has standing to insist that the Nuclear Regulatory Commission supplement its 1982 EIS to make sure that the EIS supports the existing Part 61 regulations. According to Michigan, the Commission has a mandatory duty to supplement the 1982 EIS because the NEPA regulations that were promulgated by the Council on Environmental Quality mandate all federal agencies to prepare supplements to EISes if "[t]here are significant new circumstances ... relevant to environmental concerns" that bear on the agency's proposed action. See 40 C.F.R. § 1502.9(c)(1)(ii). Michigan argues that the Commission's "potential future federal actions of licensing [LLRW] disposal facilities" constitute the "major federal actions" significantly affecting the quality of the human environment that trigger the NEPA's EIS requirement. Furthermore, because of the 1985 Policy Act, Michigan may be subject to the Part 61 licensing regulations, which were based on the 1982 EIS; therefore, according to Michigan, it has standing to insist on full implementation of the NEPA as it relates to Michigan, the 1985 Policy Act, and Part 61 regulations.
 
 
 20
 The United States argues that Michigan, who has yet to apply for a disposal facility license, has no standing because its complaint fails to allege any concrete injury to its resources or residents that might be redressed by preparation of the EISes: "[Michigan]'s assertion of an abstract interest in the proper operation of the NEPA process, unrelated to the environmental impacts that the EIS[e]s in question would analyze, is insufficient to establish standing under Article III." According to the United States, Michigan is not concerned about NEPA's requirements regarding any alleged major federal action undertaken by the Nuclear Regulatory Commission or the Department of Energy; rather, Michigan is really concerned with avoiding its responsibilities under the Policy Act, which places responsibility for LLRW disposal on the individual states.
 
 B.
 1.
 
 21
 The question whether Michigan has standing to assert its NEPA claims is an issue of law subject to de novo review. Bodie-Rickett & Assoc. v. Mars, Inc., 957 F.2d 287, 289 (6th Cir.1992). Under the Atomic Energy Act, challenges to the Nuclear Regulatory Commission's administrative actions must be brought before the Commission for an initial proceeding. 42 U.S.C. § 2239(a). Review of the Commission's final order--entered in a proceeding "for the issuance or modification of rules and regulations dealing with the activity of licensees"--is "subject to judicial review in the manner prescribed in [the Hobbs Act]." 42 U.S.C. §§ 2239(a), (b). The Hobbs Act provides that federal courts of appeals exercise "exclusive jurisdiction" over final orders of the Nuclear Regulatory Commission. 28 U.S.C. § 2342(4); see Florida Power & Light Co. v. Lorion, 470 U.S. 729, 746, 105 S.Ct. 1598, 1608, 84 L.Ed.2d 643 (1985). The district court characterized Michigan's action as a challenge to the Commission's Part 61 regulations. As a result, the court determined that it did not have jurisdiction over the NEPA claims because the judicial review rules of the Hobbs Act applied. Michigan, 773 F.Supp. at 1004.
 
 
 22
 Michigan has not filed for a license to construct a disposal facility, and it claims that it has no desire, at this time, to challenge the regulations. But Michigan fails to specify what injury it suffers from the defendants' failure to prepare EISes. Any potential injury to Michigan would arise from the implementation of the Part 61 regulations, not from an EIS independent of the regulations. The district court correctly found that a challenge to the Commission's regulations, which were based on the 1982 EIS, presents the only action which directly touches upon Michigan's responsibilities. The district court's finding is supported by Michigan's complaint, which provides in relevant part:
 
 
 23
 150. The proliferation of LLRW Disposal Facilities and reduced volumes of LLRW directly impacts the [Commission's] Part 61 Regulations, including, but not limited to, the financial assurance regulations and regulations pertaining to environmental safety at the LLRW Disposal Facilities, thereby requiring a supplement to the 1982 EIS.
 
 
 24
 151. The proliferation of LLRW Disposal Facilities and reduction in projected volumes of LLRW has a direct bearing on the impacts of the [Commission's] Part 61 Regulations,.... These impacts on the regulations mandate that the 1982 EIS be supplemented.
 
 
 25
 (Emphasis added.) Michigan's complaint establishes that its real concern is with the EISes' effects on the licensing regulations. The action is, therefore, subject to the judicial review provisions of the Hobbs Act.
 
 
 26
 Michigan agrees that the district court would not have jurisdiction if Michigan was challenging the Part 61 regulations promulgated by the Nuclear Regulatory Commission. Michigan repeatedly argues, however, that it is not attacking the regulations; rather, it is asserting its right to insist that the Commission and the Department of Energy comply with the requirements of NEPA and its regulations.[4] Consequently, the precise issue before this court is whether Michigan has standing under the NEPA to seek an order to compel the Commission to prepare EISes even though Michigan is not challenging the regulations that are affected by the EISes. More specifically, the issue is whether Michigan identifies a concrete injury that could be redressed by the district court.
 
 2.
 
 27
 Standing, which comes from Article III's requirement that federal courts determine only those issues that arise in a "case or controversy,"[5] is a threshold requirement to any suit. To meet Article III's standing requirement, Michigan must demonstrate " 'a personal stake in the outcome of the controversy.' " Woods v. Milner, 955 F.2d 436, 439 (6th Cir.1992) (citation omitted). To demonstrate this "personal stake," Michigan must establish: 1) that it " 'personally ... suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant' "; 2) that the injury is fairly trace[able] to the challenged action; and 3) that the injury can likely be redressed by a favorable decision. Id. (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citation omitted)).
 
 
 28
 Michigan argues that it has standing "by virtue of the fact that the regulations to which the EIS apply are applicable to it and Michigan has a right to insist upon the full implementation of the [NEPA] as it directly relates to Michigan." According to Michigan, "merely insisting upon appropriate implementation of NEPA" is enough to confer standing. Michigan also argues that it does not challenge the regulations themselves, which are affected by the EISes, and whether it will ever challenge the regulations is "irrelevant."
 
 
 29
 As the district court found, Michigan failed to identify any harm or immediate threat of harm to its resources or its residents that the preparation of an EIS could alleviate:
 
 
 30
 While th[e] language [of the NEPA] arguably requires [the Nuclear Regulatory Commission] to implement and update the 1982 EIS when warranted, there is no indication from the complaint, or from the arguments made before the Court, that plaintiff is in any way injured by defendant's alleged failure to amend the EIS. The [Commission] does not owe plaintiff a specific duty to supplement the 1982 EIS and plaintiff cannot establish that Congress intended to grant any person or state standing to sue the [Commission] based on an alleged failure to properly implement the NEPA.
 
 
 31
 Michigan, 773 F.Supp. at 1004. Although Michigan alleges that it is not challenging the Part 61 regulations, and that it only challenges the EISes, the EISes are only significant because of their effect on the regulations. An update of the EIS by itself has no effect on the rights or obligations of Michigan unless Michigan seeks a license under the requirements of the regulations. With respect to agency action and the traditional role of the courts, the Supreme Court has stated:
 
 
 32
 Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the extent that, a specific "final agency action" has an actual or immediately threatened effect.
 
 
 33
 Lujan v. National Wildlife Fed'n, 497 U.S. 871, 894, 110 S.Ct. 3177, 3191, 111 L.Ed.2d 695 (1990). Michigan does not have standing to police the Nuclear Regulatory Commission or the Department of Energy, and Congress did not provide federal courts with any authority to ensure that regulations promulgated under NEPA or the Atomic Energy Act are followed.
 
 III.
 
 34
 We conclude, therefore, that Michigan does not have standing to compel the Nuclear Regulatory Commission and the Department of Energy to complete the EISes when Michigan is not challenging the regulations that those statements would impact. We also conclude the district court properly found that Michigan's NEPA claims really involved a challenge to the Commission's regulations; therefore, under NEPA and the Hobbs Act, Michigan must seek relief through a petition to the Nuclear Regulatory Commission with review of any adverse agency action in the court of appeals. For these reasons, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior United States Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 Recently, the Supreme Court held that this "take title" provision of the Policy Act is unconstitutional. See New York v. United States, --- U.S. ----, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)
 
 
 [2]
 In April 1990
 
 
 [3]
 The district court found the contested provisions of the 1985 Policy Act constitutional. However, in New York v. United States, --- U.S. ----, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the Supreme Court struck down § 2021e(d)(2)(C) of the 1985 LLRW Act, which would have required states that failed to provide for disposal of LLRW generated within their borders to take title of the waste beginning in 1996. The Supreme Court upheld the Act's other provisions. Thus, New York rendered Michigan's constitutional claims moot, and Michigan does not attempt to raise those claims in this appeal
 
 
 [4]
 Michigan also argues that the well-established jurisdictional principles do not apply in this case because the Commission never issued a final order. However, the Commission never issued an order disposing of Michigan's NEPA claims because Michigan never presented them to the Commission
 
 
 [5]
 "The judicial Power [of the United States] shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under the Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."
 U.S. Const. Art. III, § 2.