Karen L. Goodwin, U.S. Attorney's Office, Springfield, MA, Charles E. Mullins, Office of the Gen. Counsel, Nuclear Regulatory Com'n, Washington, DC, for defendant.

## CITIZENS AWARENESS NETWORK, INC., Plaintiff,

v.

## U.S. NUCLEAR REGULATORY COMMISSION, Defendant.

### Civ. A. No. 94–30071–MAP.

United States District Court, D. Massachusetts.

May 20, 1994.

## MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

(Docket No. 06)

PONSOR, District Judge.

### I. INTRODUCTION.

This complaint arises from the Nuclear Regulatory Commission's oversight of the decommissioning of the Yankee Rowe Nuclear Power Plant, one of the first nuclear facilities to be shut down in the United States. Plaintiff, Citizens Awareness Network ("CAN"), alleges that the Nuclear Regulatory Commission ("NRC") violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* and related federal regulations, by failing to conduct an environmental impact study ("EIS") prior to NRC approval of Yankee Rowe's early component removal plan. Implementation of this plan, CAN maintains, will result in the removal of approximately 90% of the nuclear waste from Yankee Rowe's facility without any independent assessment of the risks to the environment, particularly the local community.

CAN has requested issuance of a preliminary injunction against the NRC, which would stop further implementation of Yankee Rowe's early component removal plan and enjoin the disassembly and shipment of nuclear waste to a treatment facility in Barnwell, South Carolina. The NRC denies that it violated NEPA and, more importantly, asserts that this court lacks subject matter jurisdiction to hear this claim. Defendant claims that the Hobbs Act, 28 U.S.C. §§ 2341 *et seq.,* requires that plaintiff's claims be heard by the court of appeals.

## II. FACTS.

The relevant facts are as follows.

In February of 1992, Yankee Rowe Nuclear Power Station ("Yankee Rowe"), located in Rowe, Massachusetts, notified the NRC of its decision permanently to close down its facility. By August 1992, NRC amended Yankee Rowe's operating license to a possession only license ("POL"). Federal regulations require Yankee to submit a decommissioning plan within two years of cessation of its operations. 10 CFR 50.82.

Prior to January of 1993, the NRC held the position that the decommissioning of a nuclear plant could not begin before the NRC formally approved the decommissioning plan. It is undisputed that this approval process would include NEPA review and preparation of an EIS. In January of 1993, the NRC changed its position regarding the permitted scope of a licensee's decommissioning activities prior to NRC's final approval of a decommissioning plan. According to the NRC's current interpretation of its regulations, Yankee is entitled under the terms of its POL and without further NRC approval, to undertake any decommissioning activity that does not (a) foreclose the release of the site for possible unrestricted use, (b) significantly increase decommissioning costs, (c) cause any significant environmental impact not previously reviewed, or (d) violate the terms of the licensee's existing license or 10 CFR § 50.59.

In February of 1993, Yankee Rowe requested NRC approval of early removal of nuclear plant components from its facility. NRC met with Yankee Rowe and members of CAN in June of 1993 to discuss various aspects of the early decommissioning plan. In July of 1993, NRC informed Yankee Rowe that its possession only license permitted the early component removal plan and that Yankee's license did not need to be amended to carry out the plan. The upshot of this change in policy was that Yankee Rowe, through its early component removal plan, would be permitted to carry out a large part of the physical work of decommissioning *before* the final decommissioning plan was formally approved by the NRC.

On three separate occasions, members of CAN requested formal hearings to discuss its safety and environmental concerns regarding Yankee's early component removal plan. On March 31, 1994, NRC issued an order denying CAN's request for an adjudicatory hearing, reasoning that CAN was not entitled to an adjudicatory hearing. According to the Commission, Yankee's early component removal plan was being performed pursuant to 10 CFR § 50.59, which permits a licensee to make changes in its facility as long as the changes do not present "an unreviewed safety question." The Commission concluded that, in removing the nuclear waste from its facility, Yankee Rowe was properly acting under its possession only license which permitted transportation of certain hazardous materials without prior NRC approval. As such, the NRC reasoned, CAN was not entitled to an adjudicatory hearing.

On the same day that CAN received the letter from the NRC denying their request for a hearing, it filed suit in this court seeking to stop Yankee's early component removal plan until NRC complies with NEPA and performs an appropriate plan EIS.

## III. DISCUSSION.

The Hobbs Act provides, in part, that the court of appeals has exclusive jurisdiction to set aside, suspend, (in whole or in part), or determine the validity of, all final orders of the NRC under 42 U.S.C. § 2239. 28 U.S.C. § 2342(4). Section 2239, in turn, makes reviewable "the granting, suspending, revoking, or amending of any license." 42 U.S.C. § 2239. In *Florida Power & Light v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court broadly interpreted this jurisdictional grant, holding that decisions that are ancillary to licensing decisions may be challenged only in the court of appeals.

In this case, CAN is, in essence, challenging a final order by the NRC in a licensing or related proceeding. As such, the court of appeals, not the district court, is the appropriate forum to address the merits of plaintiff's claims.

On March 31, 1994, the NRC sent CAN representative Frederick Katz a letter in-

forming him that CAN was not entitled to receive an adjudicatory hearing regarding the activities at Yankee Rowe. *See* Defendant's Exhibit 3. In this letter, the NRC explained that the Commission had issued a decision denying a request by a similar group, Environmentalist, Inc., for an adjudicatory hearing regarding ongoing component removal activities at Yankee Rowe. The letter continued

> The Commission has now issued a decision in response to that petition. As you can see from that decision, a copy of which is enclosed for your review, the Commission has ruled that the Component Removal Program ("CRP") at Yankee NPS does not involve any activity that requires the offer of an adjudicatory hearing. Therefore, the Commission has denied your renewed request for an adjudicatory hearing regarding the CRP for the reasons stated in the attached order and in the Commission's letters to you dated November 18, 1993 and January 4, 1994.
>
> *This letter constitutes the Commission's final response to your letter of December 13, 1993.*

Defendant's Exhibit 3 (emphasis added).

Despite its citation of NEPA, CAN's complaint essentially attacks NRC's decision that Yankee's possession only license permits it to perform early component removal of nuclear waste without requiring amendment to Yankee's license and without formal environmental review. In other words, NRC's alleged failure to prepare an environmental analysis of the early component removal plan (which forms the basis of the NEPA violation) cannot be separated from NRC's decision that Yankee Rowe's possession only license entitled Yankee to engage in early decommissioning activities.

CAN maintains that its NEPA claim is based simply on NRC's failure to prepare an environmental analysis of Yankee's early component removal plan. According to CAN, the complaint is not challenging Yankee Rowe's scope of authority to undertake decommissioning activities. NEPA requires the NRC to prepare an environmental analysis whenever there is a "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). However, in order to determine whether NRC engaged in "major Federal action," the court must determine first whether Yankee Rowe's POL authorized them to engage in decommissioning activities prior to NRC final approval of a decommissioning plan or whether an amendment was required to Yankee Rowe's POL. Under the Hobbs Act, the court of appeals has sole jurisdiction to hear such challenges to final agency orders. In short, plaintiff—for perhaps understandable reasons, as will be seen below—is attempting to stick a NEPA label on a Hobbs Act claim.

The NRC has provided the court with several cases, both published and unpublished, which persuasively hold that a district court lacks subject matter jurisdiction in these circumstances. *See e.g. State of Michigan v. U.S.,* 994 F.2d 1197 (6th Cir.1993); *Center for Nuclear Responsibility v. Nuclear Regulatory Commission,* 781 F.2d 935, 937–38 (D.C.Cir.1986); *West Chicago, Ill. v. Nuclear Regulatory Commission,* 701 F.2d 632 (7th Cir.1983); *Center for Kelley v. Nuclear Regulatory Commission, et. al.,* No. 4:93–CV–7 (W.D.Mich. May 10, 1993); *Macias v. Kerr–McGee, et. al.,* No. 92–C–3389, 1993 WL 408357 (N.D.Ill. Oct. 8, 1993).

To conclude, although plaintiff claims that its NEPA claim is not based on a challenge to NRC's decision regarding the scope of decommissioning activity allowable under Yankee Rowe's POL, in order to reach the NEPA violation the court must address NRC's decision that Yankee Rowe did not have to amend its license in order to engage in extensive early component removal prior to NRC's approval of a decommissioning plan. Judicial review of this decision must rest with the court of appeals.

The court makes this decision with a heavy heart. The plaintiffs have been diligently attempting for months to get a hearing on the appropriateness and competence of the NRC's actions. Many of them live near the site of the decommissioned nuclear plant. They and their families are the most directly at risk if the job of removing contaminated materials is bungled. Moreover, if they do suffer harm, its full extent may not be known for years or decades.

Not only have the plaintiffs been denied the opportunity to present their concerns and to hear the response of the NRC at a formal hearing, they have not as yet even been afforded a forum in which to argue their *entitlement* to a hearing. They had no incentive to seek a hearing when the NRC originally issued the POL, because at that time it *was* the policy of the NRC to require final approval and NEPA compliance before authorizing early component removal. Months later, the NRC now concedes, this policy changed and the NRC decided to view the POL as itself authorizing early component removal without more. Requests for hearing at this point were denied. It was only on the day this lawsuit was filed that the NRC issued what it now characterizes as a "final decision" entitling the plaintiffs to review before the First Circuit Court of Appeals, and not before the district court. It was only a few days prior to the hearing on plaintiffs' motion for preliminary injunction that the defendant finally submitted a report by an agency expert purporting to rebut the opinion offered by plaintiffs of risk to the community.

This course of conduct suggests a concerted bureaucratic effort to thwart the efforts of local citizens to be heard about an event that vitally affects them and their children. It calls to mind the activities of Charles Dickens' fictional Office of Circumlocution in *Bleak House.* The prospect that this tactic may be used nationally, as more nuclear plants shut down, and more local citizens groups express concern about the impact of the process on their lives, is, to put it mildly, disquieting. It would seem no more than simple fairness—as a matter of policy, if not of strict law—to give local people the opportunity to be heard when something of this magnitude occurs in their community. If they are *not* to be given any voice, community members at least have a right to be told why, promptly and clearly, by some disinterested adjudicatory body.

Having said this, the court must nevertheless conclude that this district court is not the proper forum for such proceedings. All the courts since *Lorion* that have addressed the issue have concluded that this kind of NRC decision-making falls under the Hobbs Act and may be reviewed only by the court of appeals. NEPA may not be used to avoid this well established review procedure.

Plaintiffs have the right to seek prompt review of this court's decision and, if they feel it appropriate, to request expedited action by the court of appeals. If this court is incorrect in its estimate of its power, the case may be remanded for further proceedings. Alternatively, or in addition, plaintiffs have the right to seek review by the court of appeals of the NRC's March 31, 1994 decision. In that event at least, the defendant will be unable to hold up a jurisdictional bar, and the plaintiffs will get an opportunity for the hearing they have sought in vain for so long.

### IV. CONCLUSION.

For the reasons stated above, the motion for preliminary injunctions is denied and plaintiff's complaint is dismissed for lack of subject matter jurisdiction. A separate order will issue.