**BROADENED HORIZONS RIVERKEEPERS, Save America's Forests; the Bankhead Monitor; and Heartwood, Plaintiffs,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS; John L. Whisler, Jr., District Engineer, and Tennessee Valley Authority, Defendants.**

No. 1:96–CV–446.

United States District Court,
E.D. Tennessee.

May 20, 1998.

Donald J. Aho, Phillip E. Hoover, Chambliss, Bahner & Stophel, PC, Chattanooga, TN, Ray Vaughan, Montgomery, AL, for Plaintiffs.

M. Kent Anderson, U.S. Department of Justice, Office of U. S. Attorney, Chattanooga, TN, R. Lee Leininger, Kenneth E. Kellner, U.S. Department of Justice, Environment & Natural Resources Division, Teri R. Thomsen, Eileen Sobeck, John J. Sipos, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Edward S. Christenbury, James E. Fox, Robert C. Glinski, Ronald E. Klipsch, and Harriet A. Cooper, Tennessee Valley Authority Office of General Counsel, Knoxville, TN, Steven P. Quarles, J. Michael Klise, Thomas R. Lundquist, Crowell & Moring, LLP, Washington, DC, Roger W. Dickson, William P. Eiselstein, Miller & Martin, Chattanooga, TN, for Defendants.

### *MEMORANDUM*

EDGAR, District Judge.

### I.

This suit is brought by four environmental organizations against the United States Army Corps of Engineers and its District Engineer, John L. Whisler, Jr. (the "Corps"); and the Tennessee Valley Authority ("TVA"). Several companies, organizations and individuals have been permitted to intervene as party defendants. These are the Tennessee Forestry Association; Van R. Michael, Trustee; Champion International Corp.; International Paper Corp.; American Forest and Paper Association; and Southeast Wood Fibers, L.L.C. ("intervenors"). The Court in this opinion concludes that many of the plain-

tiffs' claims are barred by the statute of limitations, but that, because the plaintiffs lack standing, all of their claims must be **DISMISSED.** Summary judgment will be **GRANTED** to the defendants.

**II.**

Beginning in the 1940s the Corps, and later TVA, granted permits for constructing and modifying dock and loading facilities on the Tennessee and Cumberland Rivers.[1] The allegations in this case are limited to thirteen such locations. They are:

(1) Alabama State Docks, Tennessee River Mile ("TRM") 413.6;

(2) Baker Sand & Gravel—Mannington Wood Floors, TRM 390.3;

(3) Southeastern Forest Products and Champion International, TRM 145.9;

(4) Continental Grain Company, TRM 100.4;

(5) Lyon County Port Authority, Lick Creek Mile 0.4 Opposite Cumberland River Mile 43.0;

(6) Arrow Transportation Co.—Guntersville Marine, TRM 358.2;

(7) Hardin County Port Authority, TRM 207.7;

(8) Sangravl Company, TRM 100.2;

(9) Arrow Transportation Co.—International Paper Co., TRM 171.2;

(10) Lenoir City Terminal Company, TRM 600.2;

(11) Nickajack Port—City of South Pittsburg, TRM 424.0;

(12) Tinker Sand and Gravel, TRM 135.5; and

(13) Paducah—McCracken County River Port Authority, TRM 1.6.

Plaintiffs have asserted in affidavits [2] that they have suffered various environmental injuries from what they term "wholesale deforestation" of the Tennessee River Valley. In particular, they say they are impacted by the practice of forest "clear-cutting." Their complaint in this suit is that the Corps and TVA have violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321—4370d (1994 and supp. I, 1995), by issuing permits which allowed transportation of wood chips or whole logs at the above locations without considering the indirect and cumulative effects of timber harvesting. Plaintiffs also contend that the Corps and TVA have violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531—1544 (1994), by approving permits at these locations without consulting with the United States Fish and Wildlife Service about the alleged impact on timber harvesting.

Before the Court are motions for summary judgment filed by each of the defendants and intervenors.[3] In these motions the defendants and intervenors contend that the plaintiffs lack standing to bring this case, and that the plaintiffs' claims regarding many of the permit decisions made by the Corps and TVA are barred by the applicable statute of limitations. They also assert the defense of laches and several other affirmative defenses.[4]

---

1. The Corps permits are issued for dredging and construction of docks pursuant to section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, and Section 404 of the Clear Water Act, 33 U.S.C. § 1344. TVA permits are issued pursuant to section 26a of the TVA Act, 16 U.S.C. § 831y–1.

2. The affidavits were submitted by Ceilo S. Myczack and Leaf Myczack. Ceilo Myczack is a member of plaintiff Broadened Horizons Riverkeepers, and a director of plaintiff Heartwood, the latter of which is a not-for-profit corporation. Leaf Myczack is also affiliated with these two plaintiffs.

3. In reviewing the affidavits and other materials that have been submitted in support of the pend-

ing summary judgment motions, the Court has viewed all admissible facts and inferences to be drawn therefrom in the light most favorable to the plaintiffs as the nonmoving parties. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280–81 (6th Cir.1997).

4. Pursuant to a court scheduling order the pending summary judgment motions pertain only to these preliminary jurisdictional matters, and not to the merits of the plaintiffs' claims. In their answers, the Corps and TVA have said *inter alia* that they have complied with NEPA and ESA and are thus also entitled to judgment on the merits.

## III.

### Standing

A party may not bring a suit in federal court without standing. Standing is a "core component" of the "case-or-controversy" requirement of Article III of the United States Constitution. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party invoking federal jurisdiction must bear the burden of establishing three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized ..., and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " .... Second, there must be a causal connection between the injury and the conduct complained of—and the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." .... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted); *see also Bennett v. Spear,* 520 U.S. 154, ——, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997); *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla.,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

### A. Injury in Fact

■ Ceilo and Leaf Myczack live on a boat, upon which they travel up and down the Tennessee and Cumberland Rivers gathering environmental information which they provide to the public via magazine articles, churches, civic organizations, and governmental agencies. They are particularly concerned about "chip mills," which produce wood chips from hardwood harvested in the Tennessee Valley. They claim that they have suffered, and are suffering, environmental injury. In a previous ruling this Court has stricken portions of affidavits submitted by the Myczacks as inadmissible lay and expert opinion testimony under Rules 701 and 702, FEDERAL RULES OF EVIDENCE. What remains in the form of environmental injury to the Myczacks are their observations that the waterways of the Tennessee Valley have increased in turbidity and siltation; and that clear-cuts, which they have observed, are aesthetically unpleasing. Aesthetic changes that adversely affect the scenery and the environment are "judicially cognizable interests" and can be injuries in fact, *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), provided of course that they meet other Article III requirements, to-wit: that they are concrete and particularized, and actual or imminent, not hypothetical.[5] *Lujan,* 504 U.S. at 574–78, 112 S.Ct. 2130.

Accepting that the Myczacks, because they live on the river, can observe turbidity and siltation, and can observe clear-cuts (some of which they have photographed), it can be concluded that they have suffered the genre of injury which could support their NEPA claim.[6] However, as will be discussed below, these injuries are not NEPA injuries-in-fact because they are "conjectural" in the sense that they cannot be fairly traced to governmental action or inaction. Plaintiffs, for the same reason, have no injury in fact under the ESA. In addition, since the plaintiffs' affidavits provide no admissible evidence that governmental action threatens a listed species, they have no assertable injury-in-fact under ESA. *Lujan,* 504 U.S. at 564, 112 S.Ct. 2130.

### B. Causation and Redressability

■ The plaintiffs have no standing unless they demonstrate a causal connection between their environmental injury and action (or inaction) of the Corps and TVA. *Lujan,*

---

5. Only the Myczacks have submitted affidavits, and they are connected with only two of the plaintiff organizations. Therefore, the other plaintiff organizations, Save America's Forests, and the Bankhead Monitor, have demonstrated no injury-in-fact.

6. The permit decisions made by the Corps and TVA are reviewed for compliance with NEPA under the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 702, 704, 706.

504 U.S. at 560, 112 S.Ct. 2130. Here the plaintiffs claim that the Corps and TVA, in granting permits for river loading docks have not prepared an environmental statement ("EIS") for any of those permits. Plaintiffs assert that EISs would have permitted the Corps and TVA to engage in "informed decisionmaking" about the effect that the permits might have on timber cutting in the Tennessee Valley. Since the Corps and TVA have allegedly not properly evaluated this timber factor, the plaintiffs claim that they have suffered injury.

The causation issue boils down to whether the plaintiffs have shown that the river loading docks have caused them environmental harm. The difficulties which the plaintiffs face in making this showing are readily apparent. The wood that is shipped from the docks is cut from private property. The Corps and TVA have control over neither the property owners nor the timber cutters. The Supreme Court has recognized that causation is difficult to demonstrate when a plaintiff's injury is asserted to arise from the government's regulation (or lack of regulation) of third parties. Causation is here dependent upon choices made by "independent actors" not before the Court. In such a case, the plaintiffs must produce facts showing that "those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan,* 504 U.S. at 562, 112 S.Ct. 2130. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

It is a matter of economic speculation as to what private landowners would do if they were unable to ship wood through river docks. Since there are other means of transportation besides river barges, timber harvesting may not be affected. If river shipments were to be eliminated, a plausible scenario might be that chip mills and other timber users may reduce the price they pay for wood, causing landowners to absorb increased transportation costs. Landowners would then be forced to cut more timber to make the same money. Thus, foreclosure of river transportation could result in more, not less timber cutting. This is just one permutation of a changing set of economic predictions that is dependent upon the effect that closing river docks would have on the price of wood, and on the reaction of private landowners to that price.

Plaintiffs point to a decision made by TVA in 1993 wherein that agency did obtain an EIS in connection with proposals to use TVA property to construct chip mills and to construct barge terminals to be used for those mills. TVA, in a Record of Decision entered on May 13, 1998, 58 FR 28429, decided for various reasons to deny requests to make TVA lands available for chip mills. Therefore, since the chip mills could not be built, TVA also denied, under § 26(a) of the TVA Act, the applications for barge landing permits for these mills. Plaintiffs argue this denial is evidence that river shipping facilities cause their asserted injuries. The plaintiffs' argument is unpersuasive. In its decision, TVA did express some concerns about the effect that these particular chip mills might have on region timber harvesting, both positive and negative. However, since the applicants were not willing to agree to environmental limitations on their timber cutting activities, and for other reasons such as increased truck traffic, TVA denied the applications. This result is not probative of plaintiffs' contention that if TVA and the Corps denied dock permits, plaintiffs would likely be saved from environmental harm. In fact, TVA noted in its Record of Decision that timber harvesting activity is dependent upon decisions made by many thousands of private timberland owners who are beyond TVA's regulatory control.

In short, plaintiffs have not carried their burden of demonstrating that wood shipments through river docks approved by the Corps and TVA have caused them environmental harm. Absent such a showing, their injury can be only conjectural or hypothetical, and that injury does not meet the causation and redressability requirements of standing. *Michigan Gas Co. v. F.E.R.C.,* 115 F.3d 1266, 1270–1271 (6th Cir.1997).

Even if plaintiffs could demonstrate that river docks cause more timber to be harvested, they have not shown that the timber would be harvested by clear-cutting *vis-a-vis*

selective cutting or some variation thereof. Further, although the Myczacks have produced pictures of clear-cuts located at various places in the Tennessee Valley, they have produced no proof that any timber so cut passed through any of the challenged dock facilities. For example, one of the Myczacks' pictures shows an area where timber has been cut on property owned by the Bowater Corporation near Calhoun, Tennessee. Bowater's paper mill is visible in the picture. It seems likely that timber from this cutting would have been trucked the short distance to the paper mill as pulpwood [7] rather than shipped through a river dock.

If the plaintiffs could show that permitting river docks for timber shipments results in clear-cutting by private parties, they have not produced any admissible evidence linking clear-cutting to most of the environmental injury they claim to have suffered. While the aesthetic appearance of clear-cutting can be displeasing if the timber cutter sloppily cuts trees and leaves debris, plaintiffs have not connected clear-cutting to river turbidity.[8]

■ We are here discussing causation as well as redressability of the plaintiffs' *environmental* injury. Plaintiffs argue that Article III's standing requirements require them only to establish a procedural injury that results from "uninformed decisionmaking" by the Corps and TVA. In other words, plaintiffs say they are injured by the failure of the Corps and TVA to prepare EISs under NEPA. This was an issue in *Lujan v. Defenders of Wildlife* and its controversial footnotes 7 and 8. 504 U.S. at 572–573 n. 7, 8, 112 S.Ct. 1715. It is clear, as Justice Scalia said in footnote 8, no case has found standing "on the basis of a 'procedural right' unconnected to the plaintiffs' own concrete harm." The "concrete harm" here is the plaintiffs' environmental harm. Just as the State of Michigan has no standing to "police" the Nuclear Regulatory Commission or the Department of Energy without demonstrating such harm,

*State of Michigan v. United States,* 994 F.2d 1197 (6th Cir.1993), the plaintiffs in this case do not have standing to "police" the Corps and TVA. A plaintiff has no standing to raise a grievance about the operation of a governmental agency where that grievance is shared by the public. *Lujan,* 504 U.S. at 573–578, 112 S.Ct. 2130. This is so even though the plaintiffs may be "concerned bystanders" who take a special interest in the environment. *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 120–121 (3d Cir.1997). Thus, the plaintiffs in the instant case do not have standing by virtue of a mere procedural injury. Plaintiffs would have standing only if they could demonstrate that the procedural failure of the Corps and TVA to prepare EISs impaired a "separate concrete interest of theirs." *Lujan,* 504 U.S. at 572, 112 S.Ct. 2130. They have not done so.

Plaintiffs say they are not required to predict the outcome of agency action were the Corps and TVA to prepare EISs for docks. To the contrary, the District of Columbia Circuit has said that environmental plaintiffs have no standing unless they can demonstrate that it is "substantially probable" that the failure to obtain an EIS would cause plaintiffs environmental injury. *Florida Audubon Society v. Bentsen,* 94 F.3d 658, 665 (D.C.Cir.1996) (*en banc* ). A slightly different approach is taken by the Tenth Circuit which holds that in NEPA cases, the "normal standards of redressability are relaxed," and that plaintiffs' "injury" would be redressed merely by a decision by the governmental agency to prepare an EIS. *Committee to Save the Rio Hondo v. Lucero,* 102 F.3d 445, 452 (10th Cir.1996). According to the Tenth Circuit, it is immaterial whether or not the governmental agency's decision would be favorable to the plaintiffs. However, this conclusion is based on the questionable conclusion that Article III's standing requirements are to be relaxed in NEPA cases. 102 F.3d at 452; *see also State of Utah v. Babbitt,* 137

---

**7.** Plaintiffs have likewise not shown that clear-cutting is caused by demand created by chip mills versus demand created by other uses for timber such as paper mills.

**8.** This Court has previously rejected the Myczacks' conclusions that clear-cutting has adversely affected their health, longevity and comfort as inadmissible under Rules 701 and 702, FEDERAL RULES OF EVIDENCE.

F.3d 1193, 1215–16 and n. 37 (10th Cir.1998). Moreover, since the injury itself must be an actual (not conjectural) injury as required by the Supreme Court, we have to be concerned with the redressing of *that* injury, not with merely requiring the government to look into the matter.

■ In any event, these conflicting views of redressability need not be resolved here because even under *Rio Hondo* the plaintiffs have no standing unless they show that their injury would likely be redressed by a *favorable* determination by the Corps and TVA. 102 F.3d at 452. Plaintiffs have not met their burden of making this showing. If the plaintiffs were to obtain a decision from this Court that the Corps and TVA must obtain EISs for docks; and even if those EISs concluded that all river dock permits which allow timber shipments must be revoked, the plaintiffs have not shown that their environmental harm will be in any way alleviated. It is thus not likely, as opposed to merely speculative, that the plaintiffs' injury will be redressed by the relief that they seek. *Lujan*, 504 U.S. at 563, 112 S.Ct. 2130. *Steel Company v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1020, 140 L.Ed.2d 210, —— (1998). Nor have plaintiffs shown that there is a "substantial probability" that the requested governmental action will cure their claimed injury. *DeBolt v. Espy*, 47 F.3d 777, 780 (6th Cir.1995); *Jaimes v. Toledo Metropolitan Housing Authority*, 758 F.2d 1086, 1093 (6th Cir.1985); *Lugo v. Miller*, 640 F.2d 823, 830 (6th Cir.1981); *see also Simon*, 426 U.S. at 38, 96 S.Ct. 1917. The plaintiffs have not demonstrated that they have standing.

Plaintiffs no doubt have a genuine belief that private landowners in the Tennessee and Cumberland River Valleys should engage in different silvaculture practices. However, if plaintiffs wish to change those practices, they will have to use education, legislation or some means other than this litigation.

## IV.

### Statute of Limitations

NEPA was not enacted and made effective by Congress until January 1, 1970. ESA was enacted in 1973. Many of the permits, and modifications thereto, were issued by the Corps and TVA prior to those dates. Consequently, those permit decisions cannot be subject to environmental review.

The parties agree, as they must, that a six-year statute of limitations applies to their claims. 28 U.S.C. § 2401(a). *Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir.1997).[9] The complaint in this case was filed on September 19, 1996. Therefore, plaintiffs' claims are barred with respect to all permits or modifications thereof issued by the Corps or TVA prior to September 19, 1990. Twenty-four of the permit decisions made by the Corps, and all but one of TVA's decisions, pre-date this six-year statute of limitations.

■ As noted above, NEPA claims are reviewed under the Administrative Procedures Act. "Under the APA, a right of action accrues at the time of 'final agency action.'" *Sierra Club v. Slater*, 120 F.3d at 631. Here, the "final agency actions" occurred when the Corps or TVA either granted a permit or modified a permit. The plaintiffs contend, however, that the Corps and TVA have a continuing duty to review their permits and, therefore, there is no "final agency action" until the Corps and TVA fail, at some unidentified date, to conduct this review. This argument does not withstand scrutiny. First, there is no authority for the proposition advanced by the plaintiffs that the Corps or TVA, under the circumstances presented by this case, have any obligation to revisit permits that have long been issued. To the contrary, the Supreme Court has said that a governmental agency need prepare a supplemental EIS only if a "major federal action" is yet to occur *and* there is new information sufficient to show that this action will affect the quality of the human environment in a significant manner or to a significant extent

---

9. While *Sierra Club v. Slater* dealt specifically with NEPA claims, it is also clear that the six-year statute of limitations provided by 28 U.S.C. § 2401(a) also applies to claims brought under the citizen suits provisions of the ESA, 16 U.S.C.

§ 1540. *See Strahan v. Linnon*, 967 F.Supp. 581, 607 (D.Mass.1997). Furthermore, the statute of limitations analysis provided in this opinion, while relying on cases involving NEPA, applies with equal force to claims under ESA.

not already considered. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 372–74, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *see also Sierra Club v. Slater,* 120 F.3d at 632–33. Here, where permits have already been issued, and in some cases have been modified, there is no major federal action yet to occur. If the defendant governmental agencies are not under an obligation to issue supplemental EISs, they are surely not under any statutory obligation to reconsider their permit decisions. If the Corps and TVA are not required to take any action with respect to issued permits, it follows that any failure to do so is not a "final agency action" from which the six-year statute of limitations can be measured.

 Second, in *Sierra Club v. Slater,* 120 F.3d at 631, the Sixth Circuit has said that the issuance of an EIS (and the "record of decision" memorializing the same) is a "final agency action" for purposes of the APA. The Court of Appeals also held that when the government opted not to issue a supplemental EIS, that was not a "final agency action." *Id.* Similarly, here it cannot be said that the statute of limitations began to run at some unidentified time when the Corps and TVA failed to reconsider the dock permits.[10] There must be a definable date for the challenged "final agency action." To extend indefinitely the possibility for challenges to past governmental acts on the basis of new information "would render agency decision-making intractable," *Marsh,* 490 U.S. at 373, 109 S.Ct. 1851, and "there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening." *Id.,* n. 7, 109 S.Ct. 1851.

As is concluded in part III of this opinion, the plaintiffs do not have standing to bring this case. However, even if they had standing, all claims regarding permit decisions made by the Corps and TVA prior to September 19, 1990, are untimely under 28

U.S.C. § 2401(a). This disposition of these issues makes it unnecessary to consider the defendants' other affirmative defenses.

Melvin RUSHING, Wallace Doss, James Alexander, and John Barnes,

v.

SHELBY COUNTY GOVERNMENT, and Jim Rout in his official capacity as Mayor of Shelby County, Defendants.

No. 95–2485 V.

United States District Court,
W.D. Tennessee,
Western Division.

July 3, 1997.

---

10. Plaintiffs contend that its claims against the Corps are timely because of a "guidance document" issued on October 16, 1992, by the Corps to its field officers on the subject of what matters should be considered in connection with permitting decisions. This document merely expresses the Corps' opinion on the scope of its authority.

It has no legal effect, and is not subject to judicial review. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). It was, therefore, not an agency action, final or otherwise, that could trigger the statute of limitations.

Mark Allen, Florence Johnson, Curtis Johnson, Memphis, TN, for Plaintiffs.

Louis Britt, Herb Gerson, Memphis, TN, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON LIABILITY

VESCOVO, United States Magistrate Judge.

The plaintiffs, all supervisory employees of the Shelby County Correctional Center in Memphis, Tennessee, filed this lawsuit on May 31, 1995, alleging that the defendants, Shelby County Government, Shelby County Mayor Jim Rout, and the Shelby County Correctional Center,[1] improperly classified them as employees exempt from the overtime pay requirements of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.* ("the FLSA"). Plaintiffs seek compensatory damages for unpaid overtime, liquidated damages in an amount equal to the compensatory, attorney's fees and costs. The parties consented, pursuant to 28 U.S.C. § 636(c), to have all proceedings in the case, including trial and entry of judgment, conducted by a United States Magistrate Judge.

The plaintiffs contend that because defendants subjected them, or other officers in the same job classifications, to disciplinary suspensions without pay for less than a full workweek, their salaried or exempt status was destroyed and the defendants are therefore required to pay overtime salary for all the hours the plaintiffs worked in excess of a 41 hour workweek.[2] According to plaintiffs, they have worked 42 to 45 hours per week and have never been compensated for more than 40 hrs per week. They claim they are due overtime pay at the rate of one and one-half times their normal hourly rate. Plaintiffs further contend that the three year statute of limitations for willfulness is applicable, and therefore, they are entitled to overtime from May 31, 1992, three years preceding the date of filing of the lawsuit, through the date of trial.