*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,
            *Plaintiffs-Appellants,*

            *v.*

ROBERT LUECKEL, Ottawa National Forest
Supervisor, *et al.*,
            *Defendants-Appellees.*

> No. 03-1139

---

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 01-00194—Gordon J. Quist, District Judge.

Argued: August 13, 2004

Decided and Filed: August 1, 2005

Before: NELSON, SILER, and BATCHELDER, Circuit Judges.

---

## COUNSEL

**ARGUED:** Brent R. Plater, CENTER FOR BIOLOGICAL DIVERSITY, Oakland, California, for Appellants. Ronald M. Stella, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Brent R. Plater, CENTER FOR BIOLOGICAL DIVERSITY, Oakland, California, Matthew G. Kenna, KENNA & HICKCOX, Durango, Colorado, for Appellants. Terrence Dean, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellees.

---

## OPINION

---

DAVID A. NELSON, Circuit Judge. This is an appeal from the denial of declaratory and injunctive relief in a suit arising out of the failure of the United States Forest Service to comply with certain requirements of the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271 *et seq.*, and other federal statutes. The Forest Service concedes that it has not established detailed river corridor boundaries and has not completed comprehensive management plans for a number of Michigan river segments with respect to which such steps were required by statute to have been taken by 1993 and 1995 respectively. The district court dismissed the case, however, on the ground that the plaintiffs lacked standing to sue. See *Center for Biological Diversity v. Lueckel*, 248 F.Supp.2d 660 (W.D. Mich. 2002).

1

Upon de novo review, we conclude that the plaintiffs have shown that they suffered concrete injuries as a result of logging and other activities along several of the "wild and scenic" rivers in question. But we are not persuaded that the plaintiffs have established the necessary causal link between those injuries and the Forest Service's failure to perform its statutory duties. On that basis, we shall affirm the judgment entered by the district court.

I

In 1992 Congress designated sections of certain Michigan rivers and the adjacent lands as part of the national system of wild and scenic rivers. See 16 U.S.C. § 1274(a)(120)-(121), (124)-(125), (127)-(132). Each of these river segments is located within the Ottawa National Forest or the Hiawatha National Forest in the Upper Peninsula of Michigan. The Forest Service was charged with establishing detailed river corridor boundaries for each segment within one year of the designation. 16 U.S.C. § 1274(b). A comprehensive management plan for each segment, "to provide for the protection of the river values," was to be prepared within three full fiscal years of the designation. 16 U.S.C. § 1274(d). It is undisputed that the Forest Service has neither established detailed river corridor boundaries nor prepared comprehensive management plans for the river segments to which this lawsuit relates.

The lawsuit was filed against the Forest Service by three organizations with an interest in environmental preservation — Center for Biological Diversity, Northwoods Wilderness Recovery, and Superior Wilderness Action Network — seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06. (The APA provides a right of action to any person aggrieved by the acts or omissions of a federal agency. See 5 U.S.C. §§ 702, 706.) By failing to establish detailed river corridor boundaries and prepare comprehensive management plans, the plaintiffs alleged, the Forest Service "unlawfully withheld or unreasonably delayed" compliance with the Wild and Scenic Rivers Act. The plaintiffs also alleged that the Forest Service's inaction violated the National Forest Management Act, 16 U.S.C. §§ 1600 *et seq.*, and the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.*

The parties filed cross-motions for summary judgment, the defendants moving for judgment separately with respect to each of the two national forests. The plaintiffs argued that the Forest Service's admitted non-compliance with the Wild and Scenic Rivers Act required the entry of judgment in their favor. The Forest Service argued that the plaintiffs lacked standing to sue. Pointing out that the Act establishes default boundaries for each designated river segment, see 16 U.S.C. § 1275(d), and that existing land and resource management plans for the Ottawa and Hiawatha National Forests regulate activities within the wild and scenic river corridors of the forests, the Forest Service argued that its non-compliance with the Act's "technical requirements" had not harmed the plaintiffs.

In opposition to the Forest Service's motions for summary judgment, the plaintiffs submitted 10 affidavits executed by nine of their members. The main purpose of these affidavits was to demonstrate that the affiants were being injured by the Forest Service's inaction.

One affiant, Raymond Weglarz, stated that "the continuing absence of a Comprehensive Management Plan and the failure to establish detailed river corridor boundaries" have "allowed inappropriate development and damage to the riparian environment, including roads, bridges, culverts, erosion, soil compaction, petroleum product pollution, and other inappropriate uses." Mr. Weglarz pointed specifically to "logging along the East Branch of the Ontonagon [River] in the Ottawa Forest," which he said had caused erosion along the riverbank.

Another affiant, Douglas Cornett, stated a belief that "the absence of a Comprehensive Management Plan and the failure to establish detailed river corridor boundaries . . . has allowed the

Forest Service to engage in unlawful activities that destroy habitat and degrade river values . . . ." He said that two timber sales, one in the Ontonagon River corridor and one in the Sturgeon River corridor of the Ottawa National Forest, "[might] have had cutting units dropped or been significantly modified if Wild and Scenic River management plans had been in place."

In a second affidavit,[1] Mr. Cornett stated that he had visited nine of the Ottawa National Forest's wild and scenic rivers between May and October of 2002 and had found that the scientific, recreational, and aesthetic values of the rivers were not being protected. Specifically, Mr. Cornett pointed to periodic flooding and de-watering of the Middle Branch of the Ontonagon River, caused by the Bond Falls Dam, and to timber sales in the watersheds of the Cisco Branch of the Ontonagon River and the East Branch of the Presque Isle River. All of these rivers are in the Ottawa National Forest.

The remaining affiants expressed a generalized concern that logging and road construction are degrading the wild and scenic rivers of Michigan's Upper Peninsula and will continue to do so until the Forest Service establishes detailed river corridor boundaries and implements comprehensive management plans.

The Forest Service submitted affidavits detailing the current and proposed logging and road-building activities within the corridors of the wild and scenic river segments in the Ottawa and Hiawatha National Forests. The affiants stated that only six out of 23 designated river segments in the Ottawa National Forest, and none of the eight designated river segments in the Hiawatha National Forest, were being affected or would soon be affected by timber harvests or road construction. Logging activity was planned for only 1.2 percent of the acreage of the six affected river segment corridors, and only 1.05 miles of new roads were planned.

The district court granted the summary judgment motions filed by the Forest Service and denied summary judgment to the plaintiff. Concluding that the plaintiffs' affidavits demonstrated only "a theoretical possibility of harm" attributable to the Forest Service's inaction, the court held that the plaintiffs had not established any of the three elements of constitutional standing: injury-in-fact, causation, and redressability. The court also held that injunctive relief was inappropriate because there was no "showing of actual irreparable harm." This appeal followed issuance of the district court's judgment.

II

To establish standing to sue under the Administrative Procedure Act, a plaintiff must satisfy constitutional prerequisites derived from the "case or controversy" requirement of Article III of the Constitution and must demonstrate the inapplicability of "prudential" limitations imposed by the APA. See *Courtney v. Smith*, 297 F.3d 455, 460-61 (6th Cir. 2002), *cert. denied*, 540 U.S. 814 (2003). The two sets of requirements overlap substantially.

"The 'irreducible constitutional minimum of standing' contains three requirements." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

> "First and foremost, there must be alleged (and ultimately proved) an injury in fact
> – a harm suffered by the plaintiff that is concrete and actual or imminent, not
> conjectural or hypothetical. Second, there must be causation – a fairly traceable

_____

[1]The Forest Service contends that Mr. Cornett's second affidavit should not be considered because it relates to injuries that post-date the filing of the complaint. In light of our ultimate disposition of this case, we shall assume that the affidavit is properly before us.

connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability – a likelihood that the requested relief will redress the alleged injury." *Id.* at 103 (internal quotation marks and citations omitted).

In the case at bar there is a dispute as to whether each of these three requirements has been met. It is the plaintiffs who bear the burden of showing that the requirements have been satisfied. See *id.* at 103-04.

The APA imposes two requirements for standing. See *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990). First, the plaintiff's complaint must relate to "agency action," which is defined to include "failure to act." See *id.*; 5 U.S.C. § 551(13). It is undisputed that the Forest Service's failure to establish detailed river corridor boundaries and to prepare comprehensive management plans constitutes agency action within the meaning of the APA.

Second, the plaintiff must have suffered either "legal wrong" or an injury falling within the "zone of interests" sought to be protected by the statute on which his complaint is based. See *National Wildlife Federation*, 497 U.S. at 883. The plaintiffs here have not alleged any "legal wrong" resulting from the Forest Service's inaction. They have alleged, however, injuries to their members' enjoyment of the aesthetic, recreational, and scientific values of the designated river segments. Enjoyment of these values plainly falls within the "zone of interests" that the Wild and Scenic Rivers Act is meant to protect. See 16 U.S.C. § 1271.[2] We assume, moreover, that the interests of the plaintiff organizations' members in the designated river segments are closely related to the purposes of the organizations themselves, so that the organizations have standing to sue under the APA if their members have standing. See *National Wildlife Federation*, 497 U.S. at 885 (citing *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)).

The fact that the plaintiffs' alleged injuries fall within the statutorily protected zone of interests does not itself mean that the existence of the injuries has been demonstrated. To establish standing, the plaintiffs must still show that their members have suffered a concrete injury to aesthetic, recreational, or scientific interests. They must also show (1) that the injury is causally connected to the Forest Service's failure to establish detailed river corridor boundaries and prepare comprehensive management plans and (2) that the injury can be redressed by an order requiring the Forest Service to act.

The plaintiffs cannot carry their burden by generalized allegations. Because the plaintiffs' standing was challenged in a motion for summary judgment, the plaintiffs must, in the words of Rule 56, Fed. R. Civ. P., "set forth specific facts," in affidavits or through other evidence, demonstrating that each element of standing is satisfied. See *National Wildlife Federation,* 497 U.S. at 884; *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A

The plaintiffs contend that the absence of detailed river corridor boundaries and comprehensive management plans, without more, constitutes an actionable injury. We disagree.

---

[2]Section 1271 declares it to be

"the policy of the United States that certain selected rivers of the Nation which, with their immediate environments, possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values, shall be preserved in free-flowing condition, and that they and their immediate environments shall be protected for the benefit and enjoyment of present and future generations."

The plaintiffs can only suffer a concrete injury if the Forest Service or others are undertaking or threatening to undertake activities that cause or threaten harm to the plaintiffs' protected interests. Such an eventuality cannot be presumed. *Cf. Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir. 1994) ("Finding an environmental injury based on [a land and resource management plan] alone, without reference to a particular site-specific action, would 'take[] us into the area of speculation and conjecture.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). It follows, we believe, that the plaintiffs must do more than show that their members use the wild and scenic river segments for which detailed corridor boundaries and comprehensive management plans are overdue. They must show that actual, site-specific activities are diminishing or threaten to diminish their members' enjoyment of the designated river segments. See *id.* at 759.

Most of the affidavits submitted by the plaintiffs – those of Scott Berry, John Jungwirth, Steven Craig Garske, Kraig Klungness, Daniel Patterson, Rob Cadmus, and Jeff Ensing – refer generally to logging and road-building within wild and scenic river corridors without demonstrating that the affiants' enjoyment of any particular river segment has been diminished by specific instances of logging or road-building. In our view, these affidavits fail to set forth "specific facts" that can satisfy the plaintiffs' burden under Rule 56. See *National Wildlife Federation*, 497 U.S. at 886-89. Expressions of generalized concern are insufficient to establish the requisite injury. See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 199 (2000) (Scalia, J., dissenting). The insufficiency of such generalizations is particularly striking here, where there is unchallenged evidence that logging and road-building activities are planned or underway only in small portions of the corridors of six designated river segments.

The affidavits of Raymond Weglarz and Douglas Cornett, on the other hand, identify specific activities and events that have diminished or will diminish the affiants' enjoyment of particular river corridors. These are: logging along the East Branch of the Ontonagon River, logging in the Ontonagon River corridor, logging in the Sturgeon River corridor, flooding and de-watering of the Middle Branch of the Ontonagon River, logging along the Cisco Branch of the Ontonagon River, and logging along the East Branch of the Presque Isle River. Messrs. Weglarz and Cornett do not always specify that the designated segments of these rivers (as opposed to undesignated segments) are being affected by the activities that they have observed. But the Forest Service acknowledges current or proposed timber harvests along one designated segment of the East Branch of the Ontonagon River, two designated segments of the Cisco Branch of the Ontonagon River, and the sole designated segment of the East Branch of the Presque Isle River. Moreover, the Forest Service does not deny that the flooding and de-watering reported by Mr. Cornett occurs in one or more of the five designated segments of the Middle Branch of the Ontonagon River.[3] It seems to us that the plaintiffs have "set forth specific facts" showing that they are being injured by activities affecting some of the river segments at issue.

B

The next question is whether the plaintiffs have shown that their injuries – the logging, flooding, and de-watering described above – are causally connected to the Forest Service's inaction. Closely related to the question of causation is the question of redressability, *i.e.*, whether the plaintiffs' injuries are likely to be alleviated if the Forest Service is compelled to establish detailed corridor boundaries and to prepare comprehensive management plans.

---

[3] The Forest Service has denied the existence of logging activity along the designated segments of the Sturgeon River, and no segment of the main stem of the Ontonagon River is at issue in this case. Accordingly, we think that Mr. Cornett's complaint of logging activity in the Ontonagon and Sturgeon River corridors is insufficient to show that such activity occurred along designated segments of those rivers.

As the District of Columbia Circuit has pointed out, an adequate causal chain in a case involving an agency's non-compliance with procedural requirements must contain at least two links: a link between the plaintiff's injury and some substantive decision of the agency, and a link between that substantive decision and the agency's procedural omissions. See *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996) (en banc).

Here the first causal link has been established with respect to logging along the East Branch of the Ontonagon River, the Cisco Branch of the Ontonagon River, and the East Branch of the Presque Isle River, the Forest Service having acknowledged its decisions to authorize timber harvests in the designated river segment corridors. (There is no evidence, on the other hand, that the flooding and de-watering of the Middle Branch of the Ontonagon River is attributable to any substantive decision of the Forest Service.)

The question of the second causal link – whether the Forest Service's procedural omissions are causally linked to the agency's authorization of timber harvests along designated river segments – is hard to distinguish from the question of redressability. Both depend on how likely it is that the establishment of detailed river corridor boundaries and adoption of comprehensive management plans would alter the Forest Service's decisions to authorize logging activity.

The substantial equivalence of these questions is important because the "normal standards for redressability and immediacy" are relaxed when a plaintiff has asserted a "procedural right." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572-73 n.7 (1992). As the Supreme Court explained in *Defenders of Wildlife*,

> "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an Environmental Impact Statement, even though he cannot establish with any certainty that the Statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Id.*

Accordingly, the plaintiffs – who have asserted a "procedural right" to have the Forest Service fulfill its duties under the Wild and Scenic Rivers Act – need not show "with any certainty" that the establishment of detailed river corridor boundaries and comprehensive management plans would alter the Forest Service's decisions with respect to logging activity within the designated river segment corridors.

But *Defenders of Wildlife* did not entirely eliminate the redressability element of standing in cases involving "procedural rights." See *Florida Audubon Society*, 94 F.3d at 664 ("[T]he particular nature of a case does not – and cannot – eliminate any of the 'irreducible' elements of standing . . . ."). The plaintiffs must make some showing with respect to redressability, although the strength of the necessary showing may be open to debate.

The plaintiffs argue that the causation and redressability requirements may be satisfied by evidence that their injuries "reasonably could have been avoided" had the Forest Service complied with its statutory duties. We accept that standard for the purposes of this appeal. *Cf. Citizens for Better Forestry v. United States Department of Agriculture*, 341 F.3d 961, 976 (9th Cir. 2003) (stating that redressability is established by evidence that the agency's decision "could be influenced" by additional environmental considerations).

We are not persuaded, however, that the plaintiffs have "set forth specific facts" showing that the establishment of detailed river corridor boundaries and comprehensive management plans might appreciably alter the Forest Service's decision-making with respect to logging activity within the designated river segment corridors. For one thing, the plaintiffs have presented no evidence that detailed river corridor boundaries might offer greater protection from logging than the default

boundaries established by the Wild and Scenic Rivers Act. As the Forest Service points out, the default boundaries already encompass the maximum acreage that the Act allows to be encompassed by detailed boundaries. See 16 U.S.C. §§ 1274(b), 1275(d). Nor is there any real evidence that a comprehensive management plan might have altered the Forest Service's decisions. The plaintiffs point to Mr. Cornett's first affidavit, where he states that certain timber sales "[might] have had cutting units dropped or been significantly modified if Wild and Scenic River management plans had been in place." Absent any explanation of the basis for this statement, we think the statement is too speculative to satisfy the plaintiffs' burden of presenting "specific facts."

The plaintiffs also cite evidence that the lack of a comprehensive management plan hindered the Forest Service's consideration of a proposed highway rest area project within the corridor of a designated river segment in the Hiawatha National Forest. But this evidence does not suggest that the Forest Service is any more likely to approve environmentally harmful projects in the absence of a comprehensive plan. To the contrary, the Forest Service cited the absence of a plan as a reason for its *denial* of permission to build the proposed rest area. Moreover, evidence relating to a proposed highway project in the Hiawatha National Forest has little relevance to the Forest Service's decisions about timber harvests in the Ottawa National Forest.

Finally, the plaintiffs contend that the existing land and resource management plans for the Ottawa and Hiawatha National Forests do not provide adequate protection of wild and scenic river segments – the implication being that a comprehensive management plan under the Wild and Scenic Rivers Act might well provide greater protection. But the adequacy of the existing plan for the Hiawatha National Forest is irrelevant, because none of the logging activities at issue occurred there. As for the Ottawa National Forest, its existing plan states that wild and scenic river corridors "will be managed to protect and enhance the values for which the river was designated." This standard is at least equivalent to the standard prescribed by the Wild and Scenic Rivers Act. See 16 U.S.C. §§ 1274(d), 1283(a). More specifically, the plan prohibits commercial timber harvests within the corridors of wild river segments and requires that timber harvests within the corridors of scenic and recreational river segments be consistent with their scenic conditions and recreational uses. The plaintiffs have presented no evidence that comprehensive management plans typically provide for greater restrictions.

In accordance with the existing plan, the Forest Service has authorized only a very limited amount of logging activity within the corridors of designated river segments in the Ottawa National Forest. And there is undisputed evidence that the Forest Service has sought to minimize the environmental impact of that limited activity. We can find no "specific facts" in the record suggesting any likelihood that the Forest Service would have authorized even less logging activity, or would have minimized its environmental impact further, had a comprehensive management plan been in place. Even under the relaxed standard suggested by *Defenders of Wildlife*, as we see it, the plaintiffs have failed to establish the causation and redressability elements of standing.

In the light of our conclusion that the plaintiffs lack standing, we need not address the district court's ruling that injunctive relief is inappropriate. The granting of the defendants' summary judgment motions is **AFFIRMED** for the reasons stated.