RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0386p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

FRIENDS OF TIMS FORD,

         *Plaintiff-Appellant,*

    *v.*

TENNESSEE VALLEY AUTHORITY; JAMES H. FYKE, in his official capacity as Comissioner, TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION,

         *Defendants-Appellees,*

CITY OF WINCHESTER, TENNESSEE; REC DEVELOPMENT, LLC; PARCEL 71-1 DOCK ASSOCIATION, LLC; TWIN CREEKS DEVELOPMENT, LLC; ROCKY TOP LAKESHORE DEVELOPMENT, LLC.; WINCHESTER MARINA, LLC; DONALD MINOR,

         *Intervening Defendants.*

No. 08-5706

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 06-00066—Harry S. Mattice, Jr., District Judge.

Argued: June 17, 2009

Decided and Filed: November 6, 2009

Before: KEITH, COLE, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Gregory D. Buppert, DODSON, PARKER, BEHM & CAPPARELLA, P.C., Nashville, Tennessee, for Appellant. Harriet A. Cooper, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, Elizabeth P. McCarter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Gregory D. Buppert, DODSON, PARKER, BEHM & CAPPARELLA, P.C., Nashville, Tennessee, Joe W. McCaleb, JOE W. McCALEB AND ASSOCIATES, Primm Springs, Tennessee, Frank M. Fly, BULLOCK, FLY AND HORNSBY, Murfreesboro, Tennessee,

for Appellant.  Harriet A. Cooper, John E. Slater, William T. Terrell, TENNESSEE VALLEY AUTHORITY, Knoxville, Tennessee, Elizabeth P. McCarter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.  Clifton N. Miller, HENRY, McCORD, BEAN, MILLER, GABRIEL & LaBAR, PLLC, Tullahoma, Tennessee, for Intervenors.

_____

**OPINION**

_____

DAMON J. KEITH, Circuit Judge.   Plaintiff-Appellant Friends of Tims Ford ("FTF") appeals from the district court's dismissal of its case on summary judgment for want of standing.  FTF is an unincorporated association of individuals, families, and homeowners' associations, who own property adjoining the Tims Ford Reservoir ("Reservoir") or in adjacent communities, and are concerned about the environmental impact of land development near the Reservoir and the environmental impact of increased boating on, and community use of, Reservoir water.  FTF seeks declaratory and injunctive relief against the Tennessee Valley Authority ("TVA") and James H. Fyke, in his official capacity as Commissioner of the Tennessee Department of Environment Conservation ("TDEC"), for alleged violations of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4331, *et seq.*, by TVA and TDEC in their implementation of the Tims Ford Reservoir Land Management and Disposition Plan ("LMDP"), based on the Final Environmental Impact Statement ("FEIS") prepared by TVA and TDEC, and for violations of the TVA Act of 1933 ("TVA Act"), 16 U.S.C. § 831c(k)(a) and 16 U.S.C. § 831y-1, in the development of two parcels of land, Fanning Bend, and a parcel conveyed to the City of Winchester, Parcel 79B.  FTF has also brought state law claims against TDEC.  *Id.*  Because we find that FTF has failed to demonstrate standing to bring this case, we **AFFIRM** the district court's decision to dismiss this action without prejudice.

## I.    BACKGROUND

### A.    Facts

TVA completed the Reservoir in 1970 for purposes of flood control, hydroelectric generation, recreation, and economic development. Over the years, transfers and sales of land for various commercial, industrial, residential and recreational uses resulted in government ownership of 6,453 acres of land at the 11,183-acre Reservoir, of which 1,854 acres were owned by TVA and 4,599 acres were owned by TDEC. In 1998, TVA and TDEC agreed by contract to create an LMDP to determine specific uses of the Reservoir. The FEIS/LMDP at issue in this case is in fulfillment of that agreement.

FTF specifically challenges the decision by TVA and TDEC to choose as its preferred alternative for development of the Reservoir, as outlined in the FEIS/LMDP, "Alternative B-1, Balanced Land Development with Conservation Partnership," which FTF asserts was not revealed nor discussed in the draft EIS ("DEIS") prepared and circulated for public comment. Alternative B-1 "was developed by modifying B," which was presented in the DEIS, "to reflect further analysis and public comment" on the DEIS. In relevant part, it created a new allocation zone, Zone 8, and opened up nine additional shoreline miles for consideration of requests for community docks. The TVA Board adopted the LMDP, as described in Alternative B-1, on August 29, 2000, and the Tennessee State Building Commission adopted the plan on September 14, 2000. TVA issued its record of decision on the LMDP on October 28, 2000, and it was published in the Federal Register on November 8, 2000.

FTF also challenges the implementation of the FEIS/LMDP in the disposition of State property. After soliciting development proposals based on a series of conservation development goals outlined in the "Concept Plan Book, Fanning Bend Conservation Development, Tims Ford Reservoir - Winchester Tennessee" ("Concept Plan Book"), TDEC disposed of a particular tract of land, Fanning Bend, for private residential development. In the Quitclaim Deed transferring Fanning Bend to the private developer, TDEC imposed certain restrictive covenants, such as prohibiting the construction of "individual or private water-use facilities" on this parcel, enforceable by the State of Tennessee, as Grantor, upon

the private developer, its successors and assigns. In the instant action, FTF challenges the decision by TVA and TDEC to transfer land to a private developer and then to issue permits allowing the private developer to build nine community boat dock facilities. FTF also challenges TVA's decision to grant permits for marinas and community boat docks on Parcel 79B in violation of the zoning requirements in the LMDP/FEIS and the TVA Act.

In sum, among numerous specific allegations, FTF alleges TVA and TDEC violated NEPA, the TVA Act, and its own rules in transferring land for permanent residential development to the benefit of private developers; implementing a procedurally deficient FEIS/LMDP; failing to create a mandatory supplemental EIS in light of the Fanning Bend development project; and granting permits for the construction of a marina, boat dock, pier and boat slips on land specifically prohibited from such use. FTF also alleges that TVA failed to supplement the FEIS/LMDP after receiving significant new data from a "Recreational Boating Capacity Study" prepared and completed by TVA in 2002.

In support of FTF's assertion that it has standing to pursue these claims, two FTF members, Robert Taylor ("Taylor") and Steve Hammond ("Hammond"), filed affidavits alleging they are directly affected by the failure of TDEC to enforce the restrictive covenants in the deed to the developer of Fanning Bend and in the placement of two large community boat docks in Willis Lake Cove. Taylor and Hammond allege that these boat docks add significant boat traffic resulting in impaired boating safety, significantly more bank erosion, and degraded water quality. Taylor alleges that normal activity on these boat docks adds water pollution and significantly more noise, and that the docks themselves obstruct the view of the wooded shoreline.

In its request for relief, FTF seeks: (1) a preliminary injunction prohibiting TVA and TDEC from proceeding with any additional development warranting community boat dock approvals and/or permits or transfers of land for residential or commercial development on the Reservoir pending the litigation of this action; (2) a declaratory judgment stating that TVA and TDEC's implementation of the FEIS/LMDP violates NEPA, the TVA Act, and TVA's own regulations and guidelines; (3) a declaratory judgment finding unlawful TDEC's covenant with the Grantee of the Quitclaim Deed for the Fanning Bend development in violation of the TVA Act; (4) an order requiring TDEC to enforce the restrictive covenants

in the Quitclaim Deed; (5) a temporary injunction prohibiting TVA and TDEC from proceeding with any additional development of lake front property on the Reservoir until they have prepared and circulated for public and intragency comment an adequate supplemental draft and final EIS identifying and discussing in detail the environmental impacts from the proposed development of marinas, community boat docks, boat slips, increased boat traffic on the Reservoir, and permanent residences which allegedly were not anticipated in the FEIS/LMDP; and (6) costs and fees incurred in this action.

**B.      Procedural History**

FTF initiated this lawsuit by filing a complaint on October 27, 2006 against TVA and TDEC, which the district court granted leave to amend on November 6, 2007. On March 23, 2007, the City of Winchester, Tennessee; Donald Minor; Parcel 71-1 Dock Association, LLC; REC Development, LLC; Rocky Top Lakeshore Development, Inc.; Twin Creeks Development, LLC; and Winchester Marina, LLC (the "Intervenors") filed a motion to intervene, a memorandum in support of the motion to intervene, and an attached intervening counter-complaint, alleging that FTF's lawsuit has "resulted in the stoppage and delay" of approved projects at the Reservoir and the permitting processes for the docks and other developments of interest to the Intervenors. The Intervenors further alleged in their counter-complaint that FTF's actions were "not brought in good faith and are carried out solely and intentionally for the purpose of interfering with the contractual rights of the Counter-Plaintiffs." The Intervenors sought compensatory damages from FTF in addition to attorneys' fees and costs. The motion to intervene was granted on July 5, 2007. FTF filed objections on July 19, 2007.

On May 9, 2007, TDEC filed a motion to dismiss FTF's case for lack of standing. After receiving an extension of time, FTF filed a response to TDEC's motion on June 19, 2007. On June 20, 2007, TDEC replied.

On January 14, 2008, the district court entered an "Order to Show Cause," requiring FTF to demonstrate why the instant action should not be dismissed for lack of standing. The parties (FTF and all of the defendants) were ordered to "submit briefs and supporting evidence" on the issue of FTF's associational standing. The district court held in abeyance

all pending motions and objections while the parties briefed the issue of FTF's associational standing.  In compliance, FTF filed a response to the order on February 4, 2008, attaching the sworn affidavits of Taylor and Hammond. Defendants Fyke, TVA, and the Intervenors[1] filed responses on February 19, 2008, to which FTF replied on February 26, 2008.

On March 20, 2008, the district court issued an order and judgment dismissing, without prejudice, FTF's federal causes of action for lack of standing and declining to exercise supplemental jurisdiction over FTF's and the Intervenors' state law claims.  The district court expressly held that FTF failed to assert concrete and particularized allegations of a threat of future injury resulting from the development of future community boat docks, and that FTF, and its members, established instead an injury in fact stemming from two already-constructed docks.  The district court, therefore, found that FTF failed to satisfy the redressability prong of the standing inquiry, as the injury in fact alleged could not be redressed by the declaratory and injunctive relief sought.

FTF timely appealed.

---

[1]FTF argues that the Intervenors are improperly before this Court because their right to intervene was limited to the "stages of the litigation addressing the appropriateness of an injunction." Federal courts have the authority to apply appropriate conditions or restrictions on an intervention as of right. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 n.2 (1987) (Brennan, J., concurring) (quoting Advisory Committee Notes on Fed. R. Civ. P. 24, 28 U.S.C. App., p. 567, and noting that "'[a]n intervention of right under the amended rule [24(a)] may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings'"); *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1495 (9th Cir. 1995) (noting that a court may limit intervention of a nonparty to those issues in which the nonparty has a sufficient interest).  In this case, while the magistrate judge expressly stated that the Intervenors' ability to protect their interests would be impaired at the stages of litigation dealing with the appropriateness of an injunction, he did not clearly limit the grant of the Intervenors' motion to intervene to the remedial stages of litigation.  Although our Court has reviewed, at least once, a case in which private litigants have intervened as defendants in a NEPA suit, we have not expressly confronted the issue of whether this type of intervention is appropriate. *See Save Our Cumberland Mountains v. Kempthorne*, 453 F.3d 334 (6th Cir. 2006); *see also Anglers of the Au Sable v. U.S. Forest Serv.*, 590 F. Supp. 2d 877, 882 (E.D. Mich. 2008).  Additionally, those Circuits that have allowed private parties or non-federal parties to intervene in NEPA actions are split as to whether such intervention is limited to the remedial stages of litigation. *See, e.g, Forest Conservation Counsel*, 66 F.3d at 1495-97 (finding that "third parties have been granted leave to intervene only in the remedial phase of a case" and limiting the non-federal parties to intervention on "the question of whether an injunction that would directly and immediately affect their legally protected interests should issue" but declining to address whether contractually protected economic interests would entitle intervention); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) (allowing private parties and local governmental bodies to intervene as defendants in a NEPA lawsuit without limitation to the remedial stage of the lawsuit). Because the parties have not briefed the issue of whether non-federal parties may intervene in NEPA lawsuits on the basis of economic interests, we find it inappropriate to confront this issue here. Additionally, because we find the Intervenors' ability to protect their interests would only be impaired at the stages of litigation dealing with the appropriateness of an injunction, we decline to consider their arguments on appeal.

**II.**

Before reaching the merits of this case, we must address several threshold issues raised by the parties.

As a first matter, TVA contends it invited public comment on the adoption of the FEIS for thirty days after publication of the availability of the FEIS/LMDP and that FTF's "failure to comment on or object to the selection of Alternative B-1 precludes a challenge to it." Contrary to TVA's contention, failure to object or comment on a selection during administrative proceedings does not automatically preclude one from challenging the selection. Neither NEPA itself, 42 U.S.C. §§ 4321 *et seq.*, nor the CEQ regulations for the implementation of NEPA, 40 C.F.R. Parts 1500-1508, expressly limit judicial review of final agency action to those who preserved their appellate rights through public comment. *See* 40 C.F.R. § 1506.6 (detailing public involvement); 40 C.F.R. § 1503.2 (limiting the duty to comment to "Federal agencies with jurisdiction by law or special expertise with respect to any environmental impact involved and agencies which are authorized to develop and enforce environmental standards"). Additionally, as the Supreme Court found in *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 765 (2004), "the agency bears the primary responsibility to ensure that it complies with NEPA . . . and . . . an EIS' flaws might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." TVA has not shown why, nor are we persuaded that, the development of the Reservoir in the face of a deficient FEIS/LMDP was not so obvious that FTF needed to comment to preserve its right to appeal.

Next, TVA asserts that FTF's NEPA claims are barred by the applicable statute of limitations.[2] Whether a claim is barred by the relevant statute of limitations is a question of law that we review *de novo*. *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997).

---

[2]This was not a basis on which the district court dismissed FTF's lawsuit. Appellate courts, however, may affirm a decision on any grounds supported in the record. *Ley v. Visteon Corp.*, 543 F.3d 801, 805-06 (6th Cir. 2008).

NEPA does not authorize a private right of action, but judicial review is granted through the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. *Sierra Club*, 120 F.3d at 630-31 (citing 5 U.S.C. § 702); *see also* 5 U.S.C. § 706. A "complaint under the APA for review of an agency action is a 'civil action' within the meaning of" 28 U.S.C. § 2401(a), and is governed by a six-year statute of limitations. *Sierra Club*, 120 F.3d at 631; *see also Southwest Williamson County Cmty. Ass'n v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999). The limitations period begins to run from the time of "final agency action." *Southwest*, 173 F.3d at 1036 (citing 5 U.S.C. § 704). In determining what constitutes final agency action, "'[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.'" *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788 (1992)). A "final EIS," for example, "or the record of decision ["ROD"] issued thereon constitute[s] final agency action." *Id.*; *see also Sierra Club*, 120 F.3d at 630. Additionally, "*[a]pproval* of a [land use] plan is a major Federal action requiring an EIS . . . [and] that action is completed when the plan is approved." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 73 (2003) (citations and internal quotation marks omitted). Read together, the ROD on the LMDP, based on the accompanying FEIS, is the final relevant agency action in the instant case. *Cf. Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 983 (9th Cir. 2006) (stating that "*issuance* of an AOI [annual operating instruction] . . . is the consummation of a process that sets the parameters for the upcoming grazing season and . . . imposes legal consequences on the permit holder) (emphasis added). Here, the ROD on the LMDP was issued on October 28, 2000. When FTF filed its complaint on October 27, 2006, it did so just before the expiration of the applicable statute of limitations. Therefore, the claims relating to the adequacy, preparation and implementation of the LMDP, and the accompanying FEIS, under NEPA are not time-barred.

Finally, FTF contends that the district court's decision to dismiss this case on summary judgment was procedurally improper. We review a district court's decision to convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment

under Rule 56 for abuse of discretion. *Ball v. Union Carbide Corp.* 385 F.3d 713, 719 (6th Cir. 2004); *see also Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). Before a district court can make this conversion, it must give the "parties . . . [a] reasonable opportunity to present all material made pertinent to" the issue, which requires sufficient notice and an opportunity for further discovery. *Ball*, 385 F.3d at 719 (quoting Fed. R. Civ. P. 12(b)); *see Shelby*, 203 F.3d at 931 (noting that "[w]hether a district court must provide actual notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case"). Once the conversion has been made, the substance of the district court's decision is reviewed *de novo* "under the normal standards for summary judgment." *Shelby*, 203 F.3d at 931.

The district court issued an "Order to Show Cause" on January 14, 2008, ordering the parties to show through briefs and supporting evidence "why the instant action should not be dismissed for lack of standing," particularly associational standing, as "Plaintiff purports to prosecute the instant action as an unincorporated association . . . ." The district court's procedural action was consistent with the power it has to require further particularized allegations of fact before dismissing a case for lack of jurisdiction. In *Warth v. Seldin*, the Supreme Court detailed the procedure by which appellate courts are to rule on such motions to dismiss:

> both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party . . . . At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact . . . . If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin*, 422 U.S. 490, 501-02 (1975). In this case, the parties were ordered to submit briefs and supporting evidence on the issue of associational standing. After granting the parties an opportunity for further discovery (21 days from the date on which the Order to Show Cause was filed until the initial brief was due), and accepting as true

all of FTF's factual allegations, the district court found that FTF failed to demonstrate standing. Thus, the district court faithfully complied with the process outlined in *Warth*.

FTF's argument that it suffered prejudice because discovery was still fully underway when the district court dismissed its case is undermined by its failure to demonstrate, or even allege, that it sought an extension of time to complete discovery prior to filing its initial brief. It did move the district court for leave to amend its pleadings or file additional affidavits, but only "[i]n the event . . . [the district court] [found] that the Plaintiff's allegations [were] insufficient in some degree to support associational or representational standing" -- a blatant request for a second bite of the apple. Moreover, FTF, in fact, filed affidavits along with its brief.

FTF additionally argues that it was given insufficient notice that it risked dismissal as to *both* defendants in that the "Order to Show Cause" did not address any defendant other than TDEC, nor was there any other dispositive motion before the court other than the State's. FTF's argument is unpersuasive. The district court expressly stated in its "Order to Show Cause" that "the Plaintiff's Complaint," which was filed against both defendants, "does not established [sic] that at least one of its members has individual standing to bring the instant action." (ROA at 344). In that same order, the district court directed the "defendants," in plural, to submit responsive briefs. The defendants did so, and TVA specifically addressed FTF's standing to raise the federal causes of action at issue. In reply, FTF addressed TVA's arguments, even as it called them procedurally improper and not properly before the district court. FTF cannot reasonably claim surprise and prejudice due to lack of notice that its federal claims risked dismissal, given that it addressed the substance of these claims. *Cf. Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998) (holding that notice is required "[w]here one party is likely to be surprised by the proceedings"). Therefore, the district court's dismissal of FTF's complaint was procedurally proper.

We turn to the merits of the standing issue.

## III.

**A.    Standard of Review**

Whether a party has standing to assert "NEPA claims" and TVA claims "is an issue of law subject to *de novo* review." *Michigan v. United States,* 994 F.2d 1197, 1202 (6th Cir. 1993).

**B.    Analysis**

The central issue before us is whether FTF has standing to sue TVA and TDEC for their alleged violations of NEPA and the TVA Act. To demonstrate constitutional standing, a plaintiff must satisfy the following three elements: (1) an allegation of an "injury in fact," which is a concrete harm suffered by the plaintiff that is actual or imminent, rather than conjectural or hypothetical; (2) a demonstration of "causation," which is a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) a demonstration of "redressability," which is a likelihood that the requested relief will redress the alleged injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998); *see also Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). Additionally, a plaintiff "seeking judicial review of agency action under the APA . . . must not only meet constitutional requirements of standing, but must also demonstrate prudential standing," which exists if "the interest that the plaintiff seeks to protect is 'arguably within the zone of interests to be protected or regulated by the statute . . . in question.'"[3] *Courtney v. Smith*, 297 F.3d 455, 460-61 (6th Cir. 2002) (citations omitted). Prudential standing is also met if the plaintiff alleges it suffered a legal wrong. *Ctr. for Biological Diversity v. Lueckel*, 417 F.3d 532, 536 (6th Cir. 2005). The legal injury or interest sought to be protected must relate to "'agency action,' which is defined to include 'failure to act.'" *Id.*

---

[3]As noted earlier, NEPA does not authorize a private right of action but judicial review is granted through the APA. *Sierra Club*, 120 F.3d at 630-31 (citing 5 U.S.C. § 702); *see also* 5 U.S.C. § 706. Similarly, a private party brings a TVA Act claim under the APA. *See McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 406 (6th Cir. 2006).

As an unincorporated association, FTF also must demonstrate associational standing, which is met when: (1) the organization's "members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Fednav, Ltd. v. Chester*, 547 F.3d 607, 615 (6th Cir. 2008). The plaintiff bears the burden of showing standing as to each type of relief sought. *Summers v. Earth Island Inst.,* 129 S. Ct. 1142, 1149 (2009). Here, FTF's request for injunctive and declaratory relief requires a showing of: (1) a "likelihood of substantial and immediate irreparable injury," a "requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again"; and (2) "the inadequacy of remedies at law." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 111 (1983); *see also Claybrooks v. Tenn. Dep't of Corrs.*, 1999 U.S. App. LEXIS 15174, *4 (6th Cir. 1999). Where a plaintiff has been asked to support its standing to bring a case by affidavit or other evidence, said plaintiff must set forth specific facts, which will be taken as true for purposes of the motion. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Warth*, 422 U.S. at 501-02.

In the instant case, FTF alleges its members have suffered two types of injuries: (1) procedural injuries arising from the failure of TVA and TDEC to follow NEPA procedures; and (2) ongoing injuries to their aesthetic and recreational interests arising from environmental harm to the Reservoir caused by agency action in violation of NEPA and the TVA Act.

Before turning to the merits of FTF's procedural injury claim, we must address one final threshold issue raised by TVA. TVA asserts that FTF raises for the first time on appeal that FTF "pleaded a 'procedural injury' sufficient to sustain its standing to sue for alleged NEPA violations," and that FTF's failure to make this argument in response to the district court's order to show cause precludes FTF from raising and pursuing such a theory in this Court. *See Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008); *see also Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 648 (6th Cir.

1996).    TVA's argument is compelling because FTF did not expressly label any of its allegations of injury in fact "procedural" before the district court, nor did it argue entitlement to the relaxed causation and redressability requirements connected to a procedural injury, as it now asserts on appeal.   Nonetheless, FTF did more than raise these alleged "procedural" injuries in a perfunctory manner when it argued on appeal the same violations of NEPA and the TVA Act that it raised in its complaint and amended complaint as well as in its response to the district court's order to show cause.   We therefore conclude FTF sufficiently pleaded the procedural injury for purposes of our review.

**i. TVA and TDEC's Alleged Failure to Follow NEPA Procedures**

NEPA is a procedural statute, "designed to ensure that federal agencies consider the environmental impact of their actions." *Michigan*, 994 F.2d at 1199.  To satisfy this goal, "NEPA provides that when a federal agency undertakes 'major federal action [] significantly affecting the quality of the human environment,' it must prepare an EIS concerning that action."   *Id.* (citing 42 U.S.C. § 4332(2)(C)).   Procedural rights are considered "special" insofar as a person "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 573 n.7.

**a.  Procedural Injury in Fact**

"To show a cognizable injury in fact in a procedural injury case, a plaintiff must allege that the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests and that it is reasonably probable that the challenged action will threaten these concrete interests." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006); *see also Town of Winthrop v. FAA*, 535 F.3d 1, 6 (1st Cir. 2008)*; Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969-70 (9th Cir. 2003); *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 952 (7th Cir. 2000); *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996).  Additionally, "[i]t is well settled that, in a NEPA suit, a cognizable procedural injury exists when a plaintiff alleges

that a proper EIS has not been prepared . . . when the plaintiff also alleges a 'concrete' interest - such as an aesthetic or recreational interest - that is threatened by the proposed actions." *Ouachita*, 463 F.3d at 1171 (citations and internal quotation marks omitted); *see Lujan*, 504 U.S. at 578 (stating that concrete injury is required in suits against the government, including those alleging a procedural injury); *see also City of Las Vegas v. FAA*, 570 F.3d 1109, 1114 (9th Cir. 2009); *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). NEPA is action-oriented rather than result-oriented. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349-50 (1989). "If the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Id.* at 350.

Whether FTF has adequately alleged a procedural injury in fact turns on whether the FEIS/LMDP fell below the standard required to comply with NEPA's procedural requirements and is linked to a concrete harm asserted by one of FTF's members that is connected to a proposed action. Here, FTF alleges: (1) "the agencies created a new land use classification in the FEIS, Zone 8, that was not presented in the [DEIS] and that the Zone 8 classification would open an additional nine miles of shoreline for the installation of boat docks"; (2) "the agencies 'failed to consider or even discuss in the FEIS/LMDP the environmental impacts,' including detrimental impacts to water quality, 'to the Reservoir from increased development of permanent residential homes on private land' as a result of the Zone 8 designation"; and that (3) "the FEIS concluded that the new Zone 8 designation would benefit water quality without analysis and without evidence of 'any tangible, quantifiable' benefits." FTF also alleges that a recreational boating study conducted in 2002 provided significant new information relevant to environmental concerns and warrants the preparation of a supplemental EIS.

FTF has failed to adequately plead a procedural injury, because it has failed to connect the procedural harm alleged in its complaint – the creation of a new land use classification in the FEIS without an environmental assessment, resulting in

"uninformed–rather than unwise–agency action" in violation of NEPA – to specific harm threatening particular FTF members. *See Robertson*, 490 U.S. at 351.

In support of its assertion that its members suffered concrete harm from the challenged activity, FTF submitted the affidavits of Hammond and Taylor. "[E]vironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)); *see also Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 541-42 (6th Cir. 2004). In Robert Taylor's affidavit, he states that he lives "within 100 yards of the Fanning Bend Subdivision" and is "being directly impacted by the placing [of] a large community dock with 20 boat slips in Willis Lake Cove, approximately 100 yards and a second large dock with 10 boat slips approximately 500 yards from my property." He states that this "is contrary to public commitments made by TDEC and TVA during the planning stages of Fanning Bend, and to the restrictive deed covenants" in the deed to the developer of Fanning Bend. Taylor further alleges that these community docks add "significant boating traffic resulting in impaired boating safety, significantly more bank erosion, and degraded water quality" and that the activity on the two large docks "add water pollution, significantly more noise and the docks themselves block the view from Willis Lake Cove of the pristine wooded shoreline." Therefore, Taylor alleges direct harm from two already-constructed community boat docks located in Willis Cove.

Steve Hammond's affidavit in support of FTF's complaint alleges that he owns a home "within 100 yards of the Fanning Bend Subdivision" and is "being directly impacted by the allowance of community boat slips within Willis Cove," which "adds significant boating traffic to the cove" that "further impairs boating safety . . . and will result in significantly more bank erosion which also results in degraded water quality." He additionally states that:

> The Request for Quotes [used in soliciting the developer of Fanning Bend] included a Site Parameters Map which identified 3 potential locations for 1 or more community docks but which include no acceptable locations within Willis Cove. Finally, 9 community docks were permitted with 220 boat slips (2 community docks with 30 boat slips within Willis Cove). This action results in a violation of the public commitment and the Concept Plan by allowing multiple community docks in multiple locations, including Willis Cove.

Hammond further alleges that by "not enforcing the Concept Plan parameters, TDEC has . . . allowed the degradation of water safety and water quality in and around Fanning Bend and its adjoining properties." *Id.* At oral argument, FTF acknowledged that all 9 community boat docks have now been built. Both Taylor and Hammond, therefore, allege harm from already-constructed community boat docks.

FTF has failed to demonstrate how the alleged flaws in the FEIS/LMDP, which focus primarily on Zone 8, while Fanning Bend is a Zone 7 parcel, particularly and concretely relate to the harm suffered by Taylor and Hammond from construction in Fanning Bend. Additionally, FTF alleges that the recreational boating study conducted by TVA in 2002 constituted "significant new . . . information relevant to environmental concerns," but does not additionally allege that this information bears upon a specific "proposed action or its impacts," rendering the challenged activity inadequate to support a procedural injury. *See* 40 C.F.R. § 1502.9(c); FTF's Br. at 22-23.

**b. Causation and Redressability**

Because FTF has failed to successfully allege a procedural injury in fact, we need not reach the issues of causation and redressability to find that FTF lacks standing in this case to litigate a procedural injury claim.

**ii. Ongoing Aesthetic and Recreational Injuries**

FTF additionally alleges that the Zone 8 classification in the FEIS/LMDP violates NEPA, and that the decision by TDEC, in partnership with TVA, to conceive a development plan for Fanning Bend and then allow it (land acquired by eminent domain or acquisition for a public purpose) to be conveyed to private developers for

private residential development, is totally outside the scope of, and contrary to, the explicit language in the TVA Act, 16 U.S.C. § 831c(k)(a).  FTF also alleges that TVA violated section 26a of the TVA Act, 16 U.S.C. § 831y-1, by granting permits for nine community dock facilities at Fanning Bend and permits to the City of Winchester to build a marina, boat docks, pier and boat slips on the shoreline of Parcel 79B, and that TVA and TDEC have undertaken these activities to implement the FEIS/LMDP in violation of NEPA.  FTF alleges that these violations of the TVA Act and NEPA are injuring its members' aesthetic and recreational interests in the Reservoir.

Again, we are compelled to find that FTF has failed its burden to demonstrate standing.  Under this theory of harm, FTF has failed to allege future injury that could be redressed by the requested declaratory or injunctive relief, as its two members only allege direct harm from  already-constructed community boat docks, yet seek: (1) issuance of a declaratory judgment that implementation of the FEIS/LMDP violates the TVA Act and NEPA; and (2) an injunction against unidentified future construction. *See Lueckel*, 417 F.3d at 537 (stating that "plaintiffs . . . must show that actual, site-specific activities are diminishing or threaten to diminish their members' enjoyment of the designated river segments"); *see also San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (stating that "[b]ecause plaintiffs seek declaratory and injunctive relief only, . . . it is insufficient for them to demonstrate only a past injury"); *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 n. 6 (10th Cir. 2005).

Furthermore, because FTF's suit does not additionally seek the destruction or modification of the community boat docks, nor does it seek, as noted by the district court, "remedial measures to counteract or prevent the harms allegedly caused by the current docks," there is no value to a declaratory judgment stating that TVA and TDEC violated NEPA and the TVA Act.  "The real value of the judicial pronouncement -- what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion -- is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."  *Hewitt v. Helms*, 482 U.S. 755, 761 (1987);  *see also Steel Co.*, 523 U.S. at 107 (noting that "[r]elief that does not remedy the injury suffered cannot

bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement"). Thus, FTF lacks  standing to bring its claim alleging ongoing harm to its members' aesthetic and recreational enjoyment of the Reservoir.

## IV.

Lastly, FTF contests the district court's finding that the APA is not applicable to state agencies.  Because we have already determined that FTF failed to demonstrate standing under NEPA or the TVA Act, we need not address the applicability of the APA to state agencies.

Additionally, the district court was acting well within its rights when it refused to exercise supplemental jurisdiction over the remaining state law claims against TDEC. 28 U.S.C. § 1367(c)(3); ROA at 497.

## V.  CONCLUSION

Accordingly, for the reasons stated above, we affirm the district court's order dismissing FTF's federal and state law claims without prejudice.